UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TONY DOIRELLE LEWIS,

        Plaintiff,                       Case No. 2:15-cv-202

v.                                             Honorable Gordon J. Quist

UNKNOWN AXLEY, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Montie, Kafczynski, and Olson. The Court will serve the complaint against Defendants Axley, Dabb, Hamel, and Yon.

**Discussion**

I.        Factual allegations

Plaintiff Tony Doirelle Lewis, a state prisoner currently confined at the Ojibway Correctional Facility (OCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Unknown Axley, Corrections Officer Unknown Dabb, Assistant Resident Unit Supervisor Unknown Hamel, Warden Unknown Olson, Grievance Coordinator Unknown Yon, Library Tech Unknown Kafczynski, and Ms. Montie. Plaintiff alleges that he has experienced harassment, intimidation, and retaliation by Defendants Axley and Dabb during his incarceration at OCF. Plaintiff states that on October 15, 2015, he sent Defendant Olson a letter regarding the unconstitutional conduct of Defendants Axley and Dabb, but Defendant Olson failed to take any corrective action.

On November 5, 2015, Plaintiff approached Defendant Olson and asserted retaliatory harassment by staff. Defendant Olson stated that she did not believe Plaintiff and that anything that happened was his fault. On November 23, 2015, Plaintiff was interviewed by Defendant Hamel regarding a grievance he had filed on Defendant Axley. Defendant Hamel told Plaintiff that he needed to learn to stop writing grievances. Plaintiff then filed a grievance on Defendant Hamel, but Defendant Yon refused to respond to the grievance, despite the fact that Plaintiff was not on modified access at that time. On November 30, 2015, Plaintiff was told by other prisoners that Defendant Axley had shaken down his area. Plaintiff opened his locker and noticed that his property was scattered everywhere, so he asked Defendant Axley about it. Defendant Axley told Plaintiff to write another grievance and indicated that he did not care if Plaintiff did so because he had told Defendant Yon to place Plaintiff on grievance restriction. Plaintiff filed a grievance on Defendant Axley, but Defendant Yon did not respond to the grievance.

On December 1, 2015, Plaintiff received a memorandum from Defendant Yon, which stated that Plaintiff was being placed on modified access to the grievance procedure because five previously filed grievances had been rejected pursuant to Policy Directive 03.02.130. Plaintiff claims that this was false and that his placement on modified access violated prison policy. On December 2, 2015, other inmates told Plaintiff that Defendant Axley had dismantled his area and left his locker in disarray. Plaintiff requested grievance forms so that he could file grievances on Defendants Axley, Yon, and Olson, but received no response from Defendant Yon. On December 3, 2015, Plaintiff complained about Defendant Axley to Defendant Hamel, but Defendant Hamel told Plaintiff that he should not have written grievances and that he would just have to deal with it. On December 4, 2015, Defendants Axley and Dabb were observed reading grievances from Plaintiff's locker during a shakedown. Plaintiff discovered his grievances crumpled up at the bottom of his locker. Defendant Axley told Plaintiff that Defendant Yon had ordered Plaintiff's locker to be searched each time Plaintiff requested a grievance. On December 6, 2015, Plaintiff wrote letters of complaint to Defendants Yon and Olson, but received no response.

Plaintiff claims that Defendant Axley placed his picture on the wall with a copy of the modified access memorandum and told Plaintiff that it was a reminder to him that he would have his area shaken down every time he requested a grievance. Defendants Hamel told Plaintiff that he should not have filed so many grievances and that Defendant Yon was not going to allow Plaintiff to file any more of them. Plaintiff's subsequent requests for grievances were denied.

On December 7, 2015, another inmate told Plaintiff that he saw Defendant Axley reading Plaintiff's legal documents. Plaintiff later discovered a civil complaint that he had been preparing against Defendants Axley, Dabb, and Yon had been torn and scattered on the bottom of his locker along with other papers, clothing, and hygiene items. Defendant Hamel told Plaintiff that

if he attempted to file another civil action against Defendants, he would have Plaintiff sent to Baraga.  On December 8, 2015, Plaintiff asked Defendant Axley to sign his itinerary, but Defendant Axley threw it on the floor and told Plaintiff that if he saw his name on another civil complaint, he would make sure Plaintiff would be in prison for a long time.  On December 9, 2015, Defendant Dabb told Plaintiff to watch himself.  Plaintiff's repeated requests for grievance forms were denied by Defendant Yon.

On December 10, 2015, Defendant Dabb searched Plaintiff's locker and scattered all of Plaintiff's papers on the floor.  Defendant Dabb also took Plaintiff's secure pack food and hygiene items.  Plaintiff protested that he had a receipt for all of the items, but Defendant Dabb merely told Plaintiff to file a grievance.  Plaintiff requested a grievance, but Defendant Yon did not respond.  On December 11, 2015, and December 13, 2015, Defendant Axley performed a shake down of Plaintiff's area.  Plaintiff later discovered all of his property torn up and scattered on the floor of his locker.  Plaintiff's requests for grievance forms were ignored by Defendant Yon.

On December 14, 2016, Plaintiff complained to Defendant Hamel about the conduct of Defendants Dabb and Axley.  Defendant Hamel yelled at Plaintiff, stating that Plaintiff would learn that this is what happens to prisoners who file grievances and complaints.  Plaintiff requested a grievance form, but Defendant Yon did not respond to the request.  On December 16, 2015, Defendant Dabb asked Plaintiff if he wanted a grievance, and Defendant Axley stated, "No he wants a fucken [sic] shank, I told him they are going to find his black ass in the hole hanging."  Plaintiff requested a grievance form, but Defendant Yon did not respond to the request.  Plaintiff received institutional mail from the MDOC in Lansing related to a step III grievance appeal he had sent.  The memorandum instructed Plaintiff to include responses and appeal forms with his step I grievances.  Plaintiff states that he had complied with this requirement, so someone must have tampered with

his mail. The mail also included four grievances from the Warden's office with step II responses. Plaintiff placed the responses in his locker. On December 17, 2015, Plaintiff's area was shaken down and left in total disarray. Plaintiff sorted through the papers and discovered that all of the responses pertaining to Axley and Dabb were gone. Plaintiff requested a grievance form, but Defendant Yon did not respond to the request.

In Plaintiff's supplemental complaint (ECF No.6), he alleges that on December 21, 2015, Defendant Hamel returned the secure food pack and hygiene items that Defendant Dabb had taken from Plaintiff on December 10, 2015. Several items were missing and all of the food items had been opened, which caused them to become stale. On January 3, 2016, Defendant Axley threw Plaintiff's itineraries on Plaintiff's bunk and told him that if any fell on the ground, Plaintiff would get a ticket. Plaintiff did not respond. Plaintiff later received a fabricated misconduct ticket from Defendant Axley.

On January 3, 2016, Defendant Montie, who was in charge of the indigent prisoner program at OCF, denied Plaintiff indigent funds, which prevented Plaintiff from being able to purchase hygiene supplies. Plaintiff sent a kite to Defendant Montie with proof that he had a zero spendable balance in his account, but she did not respond. Plaintiff then spoke to Defendant Montie in person, but she told him that she was not changing her mind and that he would "think twice" before writing another grievance. Plaintiff requested a grievance form, but Defendant Yon did not respond.

On January 6, 2016, Defendant Axley threw half of Plaintiff's itineraries on Plaintiff's bunk and half on the ground. Plaintiff later heard Axley tell his co-workers "that nigger Lewis wanna file a complaint on me, I'm gonna make sure his black ass end up in level five." On January 7, 2016, Plaintiff returned to his cell to find his property in disarray and his grievances torn

-5-

up and scattered inside his locker. Later that evening, while Plaintiff was performing his porter duties, Defendant Axley threw Plaintiff's itineraries on the bunk and stated that he was going to write Plaintiff another misconduct. When Plaintiff returned, Defendant Axley stated that he was going to make Plaintiff sorry that he ever filed a complaint on him. On January 8, 2016, Defendants Axley and Dabb refused to sign Plaintiff's itinerary, thereby preventing him from attending religious services. Defendant Axley told Plaintiff that he was close with the Warden and Defendant Yon and that he was going to make Plaintiff's life miserable if he filed another complaint. Plaintiff requested a grievance form, but Defendant Yon did not respond.

On January 9, 2016, Defendant Axley called Plaintiff a legal beagle, and stated that Plaintiff would not get a dime because Defendants paid the judges, and that the judges were "family." Defendant Axley also stated "tell everyone why you're in prison, you fucken [sic] child molester." Plaintiff requested a grievance form, but Defendant Yon did not respond. On January 10, 2016, Defendant Axley told Plaintiff to pack up his things because he was being transferred. When Plaintiff complied, Defendant Axley told Plaintiff that he was not going anywhere because Defendants were not done with him yet. Defendants Axley and Dabb subsequently told another prisoner that they could make things better or worse for Plaintiff, and that all they had to do is plant a knife in Plaintiff's area.

Plaintiff claims that Defendants retaliated against him in violation of the United States Constitution. Plaintiff seeks damages and equitable relief.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As noted above, Plaintiff claims that Defendants retaliated against him for his use of the grievance procedure and for his conduct in filing lawsuits against prison officials. Retaliation

based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that Defendant Montie denied him indigent status in order to retaliate against him for his grievances on other prison staff. Plaintiff further alleges that Defendant Kafczynski denied him access to indigent legal copies and writing materials. However, Plaintiff fails to allege any facts showing that Defendants Montie and Kafczynski were motivated by a desire to retaliate against him. Plaintiff assertion that Defendants Montie and Kafczynski were aware of his lawsuits is entirely conclusory. Plaintiff fails to allege any statements or conduct by Defendants Montie and Kafczynski which would show retaliatory purpose.

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at *1 (W.D. Mich., Jan. 16, 2010). Because Plaintiff alleges nothing more than temporal proximity with regard to Defendants Montie and Kafczynski, his claims against these Defendants are properly dismissed.

In addition, Plaintiff fails to make specific factual allegations against Defendant Olson, other than his claim that she failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Olson

engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Olson.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Montie, Kafczynski, and Olson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Axley, Dabb, Hamel, and Yon.

An Order consistent with this Opinion will be entered.


Dated: July 6, 2016                                        /s/ Gordon J. Quist
                                                          GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE