UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TONY DOIRELLE LEWIS,

Plaintiff, Case No. 2:15-cv-202

v. HON. GORDON J. QUIST

UNKNOWN AXLEY, et al.,

Defendants.
_______________________________/

# REPORT AND RECOMMENDATION

This is a civil rights action brought by state prisoner Tony Doirelle Lewis pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Axley, Dabb, Yon, and Hamel harassed, threatened, intimidated, and retaliated against him. Defendants filed a motion for summary judgment (ECF No. 60).[1] Plaintiff filed a response (ECF No. 66). The Court set forth the facts in the July 6, 2016, opinion:

> On November 23, 2015, Plaintiff was interviewed by Defendant Hamel regarding a grievance he had filed on Defendant Axley. Defendant Hamel told Plaintiff that he needed to learn to stop writing grievances. Plaintiff then filed a grievance on Defendant Hamel, but Defendant Yon refused to respond to the grievance, despite the fact that Plaintiff was not on modified access at that time. On November 30, 2015, Plaintiff was told by other prisoners that Defendant Axley had shaken down his area. Plaintiff opened his locker and noticed that his property was scattered everywhere, so he asked Defendant Axley about it. Defendant Axley told Plaintiff to write another grievance and indicated that he did not care if Plaintiff did so because he had told Defendant Yon to place Plaintiff on

[1] Defendants already filed one motion that argued that Plaintiff failed to exhaust his grievance remedies. That motion was denied by the Court on February 17, 2017 (ECF No. 51).

grievance restriction. Plaintiff filed a grievance on Defendant Axley, but Defendant Yon did not respond to the grievance.

On December 1, 2015, Plaintiff received a memorandum from Defendant Yon, which stated that Plaintiff was being placed on modified access to the grievance procedure because five previously filed grievances had been rejected pursuant to Policy Directive 03.02.130. Plaintiff claims that this was false and that his placement on modified access violated prison policy. On December 2, 2015, other inmates told Plaintiff that Defendant Axley had dismantled his area and left his locker in disarray. Plaintiff requested grievance forms so that he could file grievances on Defendants Axley, Yon, and Olson, but received no response from Defendant Yon. On December 3, 2015, Plaintiff complained about Defendant Axley to Defendant Hamel, but Defendant Hamel told Plaintiff that he should not have written grievances and that he would just have to deal with it.  On December 4, 2015, Defendants Axley and Dabb were observed reading grievances from Plaintiff's locker during a shakedown. Plaintiff discovered his grievances crumpled up at the bottom of his locker. Defendant Axley told Plaintiff that Defendant Yon had ordered Plaintiff's locker to be searched each time Plaintiff requested a grievance. On December 6, 2015, Plaintiff wrote letters of complaint to Defendants Yon and Olson, but received no response.

Plaintiff claims that Defendant Axley placed his picture on the wall with a copy of the modified access memorandum and told Plaintiff that it was a reminder to him that he would have his area shaken down every time he requested a grievance. Defendants Hamel told Plaintiff that he should not have filed so many grievances and that Defendant Yon was not going to allow Plaintiff to file any more of them. Plaintiff's subsequent requests for grievances were denied.

On December 7, 2015, another inmate told Plaintiff that he saw Defendant Axley reading Plaintiff's legal documents. Plaintiff later discovered a civil complaint that he had been preparing against Defendants Axley, Dabb, and Yon had been torn and scattered on the bottom of his locker along with other papers, clothing, and hygiene items. Defendant Hamel told Plaintiff that if he attempted to file another civil action against Defendants, he would have Plaintiff sent to Baraga. On December 8, 2015, Plaintiff asked Defendant Axley to sign his itinerary, but Defendant Axley threw it on the floor and told Plaintiff that if he saw his name on another civil complaint, he would make sure Plaintiff would be in prison for a long time. On December 9, 2015, Defendant Dabb told Plaintiff to

watch himself. Plaintiff's repeated requests for grievance forms were denied by Defendant Yon.

On December 10, 2015, Defendant Dabb searched Plaintiff's locker and scattered all of Plaintiff's papers on the floor. Defendant Dabb also took Plaintiff's secure pack food and hygiene items. Plaintiff protested that he had a receipt for all of the items, but Defendant Dabb merely told Plaintiff to file a grievance. Plaintiff requested a grievance, but Defendant Yon did not respond. On December 11, 2015, and December 13, 2015, Defendant Axley performed a shake down of Plaintiff's area. Plaintiff later discovered all of his property torn up and scattered on the floor of his locker. Plaintiff's requests for grievance forms were ignored by Defendant Yon.

On December 14, 2016, Plaintiff complained to Defendant Hamel about the conduct of Defendants Dabb and Axley. Defendant Hamel yelled at Plaintiff, stating that Plaintiff would learn that this is what happens to prisoners who file grievances and complaints. Plaintiff requested a grievance form, but Defendant Yon did not respond to the request. On December 16, 2015, Defendant Dabb asked Plaintiff if he wanted a grievance, and Defendant Axley stated, "No he wants a fucken [sic] shank, I told him they are going to find his black ass in the hole hanging." Plaintiff requested a grievance form, but Defendant Yon did not respond to the request. Plaintiff received institutional mail from the MDOC in Lansing related to a step III grievance appeal he had sent. The memorandum instructed Plaintiff to include responses and appeal forms with his step I grievances. Plaintiff states that he had complied with this requirement, so someone must have tampered with his mail. The mail also included four grievances from the Warden's office with step II responses. Plaintiff placed the responses in his locker. On December 17, 2015, Plaintiff's area was shaken down and left in total disarray. Plaintiff sorted through the papers and discovered that all of the responses pertaining to Axley and Dabb were gone. Plaintiff requested a grievance form, but Defendant Yon did not respond to the request.

In Plaintiff's supplemental complaint (ECF No.6), he alleges that on December 21, 2015, Defendant Hamel returned the secure food pack and hygiene items that Defendant Dabb had taken from Plaintiff on December 10, 2015. Several items were missing and all of the food items had been opened, which caused them to become stale. On January 3, 2016, Defendant Axley threw Plaintiff's itineraries on Plaintiff's bunk and told him that if any fell on the ground, Plaintiff would get a ticket. Plaintiff did not respond. Plaintiff later received a fabricated misconduct ticket from Defendant Axley.

> On January 6, 2016, Defendant Axley threw half of Plaintiff's itineraries on Plaintiff's bunk and half on the ground. Plaintiff later heard Axley tell his co-workers "that nigger Lewis wanna file a complaint on me, I'm gonna make sure his black ass end up in level five." On January 7, 2016, Plaintiff returned to his cell to find his property in disarray and his grievances torn up and scattered inside his locker. Later that evening, while Plaintiff was performing his porter duties, Defendant Axley threw Plaintiff's itineraries on the bunk and stated that he was going to write Plaintiff another misconduct. When Plaintiff returned, Defendant Axley stated that he was going to make Plaintiff sorry that he ever filed a complaint on him. On January 8, 2016, Defendants Axley and Dabb refused to sign Plaintiff's itinerary, thereby preventing him from attending religious services. Defendant Axley told Plaintiff that he was close with the Warden and Defendant Yon and that he was going to make Plaintiff's life miserable if he filed another complaint. Plaintiff requested a grievance form, but Defendant Yon did not respond.
>
> On January 9, 2016, Defendant Axley called Plaintiff a legal beagle, and stated that Plaintiff would not get a dime because Defendants paid the judges, and that the judges were "family." Defendant Axley also stated "tell everyone why you're in prison, you fucken [sic] child molester." Plaintiff requested a grievance form, but Defendant Yon did not respond. On January 10, 2016, Defendant Axley told Plaintiff to pack up his things because he was being transferred. When Plaintiff complied, Defendant Axley told Plaintiff that he was not going anywhere because Defendants were not done with him yet. Defendants Axley and Dabb subsequently told another prisoner that they could make things better or worse for Plaintiff, and that all they had to do is plant a knife in Plaintiff's area.

(ECF No. 10, PageID.298-302).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed.

2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware

of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[2]

[2] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.*, the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will

fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendant Axley asserts that Plaintiff failed to exhaust claims against him prior to the filing of his complaint. Defendant Axley argues that grievance OCF 15-11-0728-17A was not exhausted against Defendant Axley until January 29, 2016. Plaintiff's complaint was not filed until December 28, 2015. Plaintiff agrees that grievance OCF 15-11-0728-17A was exhausted after he filed this complaint. Plaintiff states that grievance OCF 15-11-0728-17A is not relevant to the claims that he asserts in this case. Plaintiff states that he exhausted his claims against Defendant Axley in grievances OCF 15-11-0748-17A, OCF 15-11-0763-28I, and OCF 15-11-0764-28E. Plaintiff asserts that he also attempted to submit several other grievances against Defendant Axley, but they were stolen and not responded to by Defendant Yon. Defendant Axley has not addressed Plaintiff's assertion regarding his grievance submissions or Plaintiff's assertion that the MDOC interfered with his ability to exhaust his grievances against Defendant Axley. Accordingly, in the opinion of the undersigned, a genuine issue of fact exists regarding whether Plaintiff exhausted his available administrative grievance remedies against Defendant Axley.

Defendants argue that Plaintiff's "fictitious scenarios" cannot support a First Amendment retaliation claim. Plaintiff has asserted several retaliatory actions that were taken by Defendants due to his grievance submissions.[3] Plaintiff asserts that Defendant Axley announced loudly in front of other prisoners: "Tell everyone why you're in prison you fucken child molester." (ECF No. 66, PageID.678). Plaintiff asserts that Defendant Axley posted a modified access memorandum with a copy of Plaintiff's picture on the wall and told Plaintiff that it was a "reminder

[3] Determining the exact factual allegation of each of Plaintiff retaliatory claims is less than clear. It appears that Plaintiff believes that his placement by Defendant Yon on Modified access to the grievance system was improper, but that he is not asserting that it was retaliatory. (ECF No. 66, PageID.680). In addition, it appears that Plaintiff is not asserting that his transfer between units was retaliatory. (ECF No. 66, PageID.679).

for Plaintiff to remember every time he request a fucken grievance he's going to tear his house up, and when Plaintiff realize what happened his black ass will be in level five." (ECF No. 66, PageID.60). Plaintiff asserts that he was subjected to an excessive amount of cell "shakedowns" and cell searches by Defendants due to his grievance submissions. Plaintiff asserts that although he was never given a direct order, Defendant Dabb wrote a retaliatory false misconduct ticket for insolence. Plaintiff was found not guilty of the misconduct ticket. (ECF No. 66-2, PageID.688). Defendants argue that they are entitled to dismissal on each of these claims because each of the alleged adverse actions taken against Plaintiff were de minimis.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g.*, *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. Plaintiff has asserted that he was threatened, given

misconducts, and that his cell was repeatedly searched solely because he had filed past grievances. Plaintiff states that Defendants informed him that they took these actions due to his grievance filings and that they would continue to take action against Plaintiff until he learned to stop filing grievances. In the opinion of the undersigned, a genuine issue of fact exists because the alleged conduct could deter a person of ordinary firmness from continuing to file grievances.

Defendants alternatively moved for dismissal based upon qualified immunity. However, qualified immunity is not appropriate where there exists a question of fact on the issues presented. When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the Plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.* In the opinion of the undersigned, questions of fact exist that preclude qualified immunity.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 60) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: January 25, 2018

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).